UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| A.M.T., by his mother and next friend Karla T., *et al.*, <br>     *Plaintiffs*, <br>     *vs.* <br> MICHAEL A. GARGANO, in his official capacity as Secretary of the Indiana Family and Social Services Administration, *et al.*, <br>     *Defendants*. | 1:10-cv-0358-JMS-TAB |

## ORDER CERTIFYING CLASS ACTION

Presently before the Court is Plaintiffs' Motion to Certify Class. This action challenges an administrative rule promulgated and enforced by the Indiana Family and Social Services Administration ("FSSA") that allegedly denies prescribed treatment to severely disabled minors in violation of federal Medicaid law. [Dkt. 10.]

### BACKGROUND

FSSA is the State agency responsible for operating the Medicaid program in Indiana. [Dkt. 37-1 at 4-5.] This program is operated under a state plan that has been approved by the federal government. [Dkt. 37-1 at 5.] Medicaid enrollees who need certain services (including physical therapy, occupational therapy, and speech pathology) must obtain a prescription for those services from a medical provider and also receive approval for the services from FSSA. [Dkt. 37-1 at 5-6.] FSSA reviews each request and then issues a decision either approving, denying, or modifying the request for services. [Dkt. 37-1 at 6, 15.]

Plaintiffs allege that FFSA has violated federal Medicaid law by denying or modifying requests for services pursuant to the following provisions of the Indiana Administrative Code:

> (b) Unless specifically indicated otherwise, the following criteria for prior authorization of therapy services apply to occupational therapy, physical therapy, respiratory therapy, and speech pathology:
>
> ***
>
> (6) Therapy for rehabilitative services will be covered for a recipient no longer than two (2) years from the initiation of the therapy unless there is a significant change in medical condition requiring longer therapy. . . .
>
> (7) Maintenance therapy is not a covered service.

405 I.A.C. 5-22-6(b)(6), (b)(7) (respectively, "§ (b)(6)" and "§ (b)(7)"). "Maintenance therapy" is defined as "therapy addressing chronic medical conditions where further progress can no longer be expected or where progress is minimal in relation to the time needed in therapy to achieve that progress." 405 I.A.C. 5-22-1(5).

Under § (b)(7), FSSA does not approve requests for maintenance therapy—in other words, "maintenance therapy is based on that person's progression, and if . . . they're no longer making progress and we're now just doing maintenance such as that can be done by a non-professional entity such as a caregiver or the person themselves can do it, that then becomes non-covered." [Dkt. 37-1 at 8.] The agency does not consider a person's potential to regress, although FSSA agrees that it is possible that maintenance therapy could prevent or delay regression. [Dkt. 37-1 at 9, 11-12.] If an individual regresses after a request for therapy is denied, the provider can request additional services "as long as they can show that they've regressed and need additional therapy due to the ability to progress." [Dkt. 37-1 at 10.]

Under the other challenged provision, § (b)(6), FSSA enforces a two-year rule, whereby most individuals are precluded from receiving requested therapies for more than two years with-

out a significant change in condition. [Dkt. 37-1 at 12-13.] While minors can receive therapy for a longer period of time on a case-by-case basis, this exception is unavailable if the agency determines that continued therapies would be maintenance therapy under § (b)(7). [Dkt. 37-1 at 13.]

The named Plaintiffs—A.M.T., J.J.M., and J.M.G.—are disabled minors ages seven, nine, and twelve who are enrolled in the Medicaid program.[1] Two of them have been diagnosed with cerebral palsy and one has been diagnosed with a type of mitochondrial metabolic myopathy. All three suffer from functional limitations and have received physical and occupational therapies pursuant to the recommendations of their treating physicians for most of their lives.

In late 2009 or early 2010, each of the Plaintiffs, through their respective providers, sought prior authorization from FSSA for their therapies to continue at the previous rates prescribed by their treating physicians for an additional six months. FSSA denied the Plaintiffs' requests in substantial part by limiting the authorized treatment pursuant to § (b)(6) and/or § (b)(7). [*See* dkts. 60-2 to 60-4 (denial notices).] At least two of the named Plaintiffs had their requested treatments denied or modified pursuant to both § (b)(6) and § (b)(7). [Dkts. 60-2 at 3 (referencing treatment for more than two years and that maintenance therapy is "uncoverable per IAC gu[i]delines"); 60-3 at 3 (citing § (b)(6) and § (b)(7) and noting "member has been receiving physical therapy for more than two (2) years" and "little or no change in the therapy goals . . . , which is maintenance therapy").]

Plaintiffs argue that FSSA's "practice or policy" either denying or limiting coverage for therapies prescribed by a Medicaid recipient's physician, refusing to cover maintenance therapy, and/or refusing to cover therapy for more than two years without a significant change in medical

---

[1] For a detailed account of the Plaintiffs' medical and treatment history with citations to evidence in the record, *see* dkt. 39 at 9-14.

condition violates provisions of federal Medicaid law. [Dkt. 60 at 18 ¶¶82-84 (citing 42 U.S.C. § 1396a(a)(8); 42 U.S.C. § 1396a(a)(10); 42 U.S.C. § 1396a(a)(17); and 42 C.F.R. § 440.230).] Plaintiffs request a permanent injunction to enjoin FSSA from enforcing § (b)(6) or § (b)(7). [Dkt. 60 at 19.]

The parties agree that between May 1, 2008 and May 1, 2010, FSSA denied 49 requests pursuant to § (b)(6) or § (b)(7) from minor Medicaid recipients who had further treatment prescribed by their providers. [Dkts. 36 at 1, 36-1 at 2, 36-2 at 2.]

Plaintiffs now ask the Court to certify the following class:

> Any and all persons in Indiana who are or will be enrolled in the Medicaid program and who are or will be under the age of twenty-one (21) who have been or will be denied coverage for physical therapy, occupational therapy, respiratory therapy, and/or speech pathology ("therapies"), or who have had or will have coverage for these therapies otherwise limited because of 405 IAC 5-22-6(b)(6) and/or 405 IAC 5-22-6(b)(7), notwithstanding the fact that a physician . . .[2] acting within the scope of his or her practice under Indiana law has or will recommend and/or prescribe these therapies for the Medicaid recipient.

[Dkt. 11 at 1-2.]

## DISCUSSION

In deciding whether to certify a class, the Court may not blithely accept as true even the well-pleaded allegations of the complaint but must instead "make whatever factual and legal inquiries are necessary under Rule 23" to resolve contested issues. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). Specifically, the Court must find that the putative class satisfies the four "prerequisites" set forth in Federal Rule of Civil Procedure 23(a). If the puta-

---

[2] Plaintiffs included the phrase "or other licensed practitioner of the healing arts" at this point in their proposed class definition. FSSA argues that those words should be removed because it is "unclear who would be included in this term and what this term means." [Dkt. 27 at 6.] Plaintiffs do not object to FSSA's proposed modification because it "will not affect class membership but will resolve the problem the State has with the class definition." [Dkt. 38 at 8.] Because Plaintiffs do not object, the Court has removed the phrase.

tive class does satisfy these prerequisites, the Court must additionally find that it satisfies the requirements set forth in Federal Rule of Civil Procedure 23(b), which vary depending upon which of three different types of classes is proposed. The Court will address each of the requirements in turn.

## I. Federal Rule of Civil Procedure 23(a)

It is Plaintiffs' burden to prove first that an identifiable class exists that merits certification under Federal Rule of Civil Procedure 23(a). *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). If a class can be identified, the four prerequisites applied under Rule 23(a) are numerosity, commonality, typicality, and adequacy of representation. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010).

### A. Identifiable Class

Plaintiffs must prove that the proposed class is identifiable, and the class definition must be definite enough that the class can be ascertained. *Oshana*, 472 F.3d at 513. A class is sufficiently defined "if the proposed class members are ascertainable by reference to objective criteria." *McGarry v. Becher*, 2010 U.S. Dist. LEXIS 28246 *5 (S.D. Ind. Mar. 24, 2010). Conversely, a class is not sufficiently defined if highly individualized inquiries must be made to determine whether a person is a member of the proposed class. *Id.*

FSSA argues that Plaintiffs' proposed class is not sufficiently identifiable because it will require the Court "to conduct individual inquiries to determine whether each potential class member falls within the class." [Dkt. 27 at 6.] The Court disagrees with this characterization, however, because the key inquiry will be whether FSSA denied all or part of an enrollee's therapy request pursuant to § (b)(6) or § (b)(7). This can be determined by referencing objective criteria—specifically, FSSA's denial notices indicating its reasons for denying the requested treat-

ments. [*See, e.g.*, 60-2 to 60-4.] Therefore, the Court concludes that the putative class is identifiable.[3]

### B. Numerosity

The Court can only certify a class that "is so numerous that joinder of all members is impracticable." Fed. R. Civ. Pro. 23(a)(1). "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1)." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 644 (N.D. Ill. 2002) (collecting cases); *Hubler Chevrolet, Inc. v. GMC Corp.*, 193 F.R.D. 574, 577 (S.D. Ind. 2000).

The parties agree that during the relevant time period, FSSA denied 49 requests pursuant to § (b)(6) or § (b)(7) from minor Medicaid recipients whose providers had prescribed therapies. [Dkts. 36 at 1, 36-1 at 2, 36-2 at 2.] This number does not include treatment modifications—*e.g.*, instances where FSSA approved a different amount of services than the provider prescribed—and FSSA admits that modifications are 60% more common than outright denials. [Dkt. 37-1 at 15.] Plaintiffs contend, therefore, that in addition to the 49 denials, there were approximately 127 modifications (49 + (1.6 x 49)) under § (b)(6) or § (b)(7) during the relevant time period. [Dkt. 38 at 3-4.]

FSSA argues that Plaintiffs have not met the numerosity requirement because there is no evidence that each denial represents a separate individual. [Dkt. 47 at 2.] This argument fails,

---

[3] FSSA also contends that the class is overbroad because Plaintiffs "continue to assume that any individual who is eligible for Medicaid and under the age of 21 is entitled to early and periodic screening, diagnostic, and treatment services" ("EPSDT") but participation in EPSDT is voluntary pursuant to 405 I.A.C. 5-15-6(a). [Dkt. 47 at 4.] FSSA argues that "an individual under the age of 21 may request services and those services could be denied without any alleged violation of 42 U.S.C. § 1396d(r)(5)"—the provision defining EPSDT. [Dkt. 47 at 4.] FSSA made this argument, however, before Plaintiffs filed their Amended Complaint, which does not assert a violation of 42 U.S.C. § 1396d(r)(5). [*See* dkt. 60 at 18 ¶¶82-84.] Therefore, the Court need not address this argument.

however, because FSSA provided the data at issue in response to Plaintiffs' request that FSSA produce "the number of Medicaid enrollees under the age of twenty-one" for whom requests for therapy were denied pursuant to § (b)(6) or § (b)(7). [Dkt. 37-1 at 19-20 ¶¶10-11.] FSSA is in the best position to know the actual number of minors affected by these regulations, and it was specifically asked to provide that information. It provides no evidence supporting its argument that the number of affected individuals could be less than the number of denials. And because that argument would indicate that FSSA provided a non-responsive answer to Plaintiffs' discovery request, any ambiguity in this regard is attributable to FSSA. Additionally, FSSA does not respond to Plaintiffs' calculation regarding the number of modifications or argue that there is a meaningful distinction for purposes of this case between denials and modifications.

Plaintiffs also seek to include future putative class members who are denied prescribed therapies pursuant to § (b)(6) or § (b)(7). FSSA advances the same argument that the number of denials may not equal the number of affected individuals, contending that "there is no evidence to support that assertion . . . that the class will continue to grow at a rapid pace." [Dkt. 47 at 3.] This argument fails for the previously stated reason that any ambiguity regarding the number of individuals represented by the denials is attributable to FSSA. This conclusion applies with even more force to future members of the putative class because FSSA is already on notice that denials and modifications pursuant to § (b)(6) or § (b)(7) have been subject to discovery; therefore, it has an ongoing duty to ensure that its discovery responses remain correct. Fed. R. Civ. Pro. 26(e).

Moreover, the identity of future class members will be ascertained by objective criteria—*i.e.*, whether or not FSSA denies them prescribed therapy pursuant to § (b)(6) or § (b)(7). Therefore, the Court rejects FSSA's argument that the class cannot be shown to exist as to future class

members. *See also Willis v. Comm'r Ind. Dep't of Corr.*, 1:09-cv-0815-JMS-LJM, [dkt. 47 at 3] (S.D. Ind. 2009) (holding that plaintiff established numerosity with 122 identifiable class members and future class members who could be ascertained by objective criteria).

Finally, it is important to recognize that members of the putative class are disabled minors, many severely disabled, who are enrolled in the Medicaid program and have had therapy prescribed by their providers but denied or modified by FSSA. The medical and economic vulnerability of the putative class members makes joinder even more impracticable and further supports the Court's finding that numerosity exists. *See Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 204-05 (E.D.N.Y. 2005) (finding the numerosity requirement met in part because "the class members are, according to the complaint, mentally disabled, and thus they may have no other means to exercise their rights because of inadequate resources to prosecute their own claims").

For these reasons, the Court finds that the Plaintiffs have satisfied the numerosity requirement.

### C. Commonality

A class action also requires "questions of law or fact common to the class." Fed. R. Civ. Pro. 23(a)(2). The commonality requirement is a "relatively low hurdle for plaintiffs." *Randall v. Rolls-Royce Corp.*, 2010 U.S. Dist. LEXIS 23421, *22 (S.D. Ind. Mar. 12, 2010). Factual variation among class grievances does not defeat commonality. *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 167 (S.D. Ind. 2009) (citation omitted). Rather, commonality is satisfied when there is a "common nucleus of operative fact" that is, a "common question which is at the heart of the case." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (citation omitted).

The common question at the heart of this case is the same for all members of the proposed class: Does FSSA violate federal Medicaid law when it denies or modifies prescribed therapy requests pursuant to § (b)(6) or § (b)(7) without examining whether regression may occur without the continued therapy? Evidence in the record (including testimony from FSSA's Rule 30(b)(6) witness) confirms that FSSA has invoked § (b)(6) and § (b)(7) to deny or modify prescribed therapy for minor Medicaid enrollees, [dkts. 37-1 at 8, 12-13; 60-2 to 60-4], and the agency admits that it does not take potential regression into account to make its decision, [dkt. 37-1 at 9, 11-12]. While the parties dispute whether this practice violates federal Medicaid law, ruling on the merits of the case before ruling on class certification "puts the cart before the horse." *Thomas v. City of Peoria*, 580 F.3d 633, 635 (7th Cir. 2009) (collecting cases). Because a common question exists at the heart of this case for all members of the putative class, the Plaintiffs have satisfied the commonality requirement.

### D. Typicality

The next prerequisite for a class action is that the "claims . . . of the representative parties [be] typical of the claims . . . of the class." Fed. R. Civ. Pro. 23(a)(3). The commonality and typicality requirements of Rule 23(a) tend to merge because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982). Although typicality may exist even if there are factual distinctions between the claims of the named plaintiffs and other class members, the requirement "directs the district court to focus on whether the named representatives' claims

have the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (citation omitted).

The claims of the named Plaintiffs have the same essential characteristics as the claims of the putative class members because, as described above, the uniting factor is that all members have had prescribed services denied or modified by FSSA pursuant to § (b)(6) or § (b)(7) without any consideration given to potential regression. While FSSA argues that there is no evidence that it isn't giving each case an individualized determination, the "issue in this case" according to the Plaintiffs is that FSSA does not consider potential regression, which FSSA admits. [Dkt. 37-1 at 9, 11-12.] Because the named representatives' claims have the same essential characteristics as the claims of the class at large, typicality exists.

### E. Adequacy

To satisfy the prerequisite of Rule 23(a), the Court must find that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. Pro. 23(a)(4). This is a two-step inquiry—"one relates to the adequacy of the named plaintiffs' representation of the class and requires that there be no conflict between the interests of the representative and those of the class in general; the other relates to the adequacy of class counsel's representation." *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. at 168. The adequacy requirement also tends to merge with the commonality and typicality requirements, although adequacy "also raises concerns about the competency of class counsel and conflicts of interest." *Falcon*, 457 U.S. at 158 n.13.

There is evidence in the record that FSSA has refused requested services to Plaintiffs pursuant to § (b)(6) and/or § (b)(7), [dkts. 60-2 to 60-4], and again, FSSA admits that it does not consider the potential for regression when making these decisions, [dkt. 37-1 at 9, 11-12]. Addi-

tionally, FSSA does not argue that the named Plaintiffs' interests are adverse to the interests of the putative class members. Therefore, Plaintiffs are adequate class representatives.

Although FSSA contested the adequacy of Plaintiffs' counsel in its brief opposing class certification, [dkt. 27 at 9], it withdrew this objection at the hearing. Moreover, the Court's own experiences with Plaintiffs' counsel confirm counsel's legal abilities, and the Court finds that their representation is appropriate.

**II. Federal Rule of Civil Procedure 23(b)**

Where, as here, a proposed class satisfies all the prerequisites of Rule 23(a), the Court can only certify the class if it fits within one of the categories described in Rule 23(b). *Oshana*, 472 F.3d at 513. The category Plaintiffs claim applies is 23(b)(2), which authorizes a class action when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. Pro. 23(b)(2).

In this case, Plaintiffs claim that FSSA's policy and practice violates federal Medicaid law, and they seek injunctive relief against any future violations. This is the "prime example" of a proper class under Rule 23(b)(2). *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997) (citation omitted); *see also Doe v. Guardian Life Ins. Co.*, 145 F.R.D. 466, 477 (N.D. Ill. 1992) ("[T]he primary limitation on the use of Rule 23(b)(2) is the requirement that injunctive or declaratory relief be the predominant remedy requested for the class members.").

Moreover, Plaintiffs have alleged a common injury to the class; specifically, that FSSA has a policy of denying or modifying prescribed therapies pursuant to § (b)(6) or § (b)(7) without any consideration given to potential regression. If Plaintiffs prove that this is a violation of fed-

eral Medicaid law, injunctive relief could be appropriate. For these reasons, the Court finds that Rule 23(b)(2) is satisfied here.

## CONCLUSION

For the reasons detailed in this Order, the Court **GRANTS** Plaintiffs' Motion to Certify Class and **CERTIFIES** the following class:

> Any and all persons in Indiana who are or will be enrolled in the Medicaid program and who are or will be under the age of twenty-one (21) who have been or will be denied coverage for physical therapy, occupational therapy, respiratory therapy, and/or speech pathology ("therapies"), or who have had or will have coverage for these therapies otherwise limited, which denial or limitation is based upon 405 IAC 5-22-6(b)(6) and/or 405 IAC 5-22-6(b)(7), notwithstanding the fact that a physician acting within the scope of his or her practice under Indiana law has or will recommend and/or prescribe these therapies for the Medicaid recipient.

The Court hereby **DESIGNATES** A.M.T., J.J.M, and J.M.G. as the representative plaintiffs for the certified class and, pursuant to Federal Rule of Civil Procedure 23(g), **DESIGNATES** Mr. Kenneth Falk and Mr. Gavin Rose as lead class counsel.

The Court now **ORDERS** the parties to meet and confer with one another and, by **December 3, 2010**, submit a joint report in this matter setting forth a proposed plan (or alternative plans) as to what notice, if any, should be provided to the class. Fed. R. Civ. Pro. 23(c)(2) ("For any class certified under Rule [23(b)(2)], the court may direct appropriate notice to the class."). Additionally, pursuant to docket entry 84, FSSA has until **December 1, 2010** to file a response to Plaintiffs' Motion for Summary Judgment.

11/22/2010

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

Betsy M. Isenberg
INDIANA OFFICE OF THE ATTORNEY GENERAL
Betsy.Isenberg@atg.in.gov

Gavin Minor Rose
ACLU OF INDIANA
grose@aclu-in.org