UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| A.M.T., *et al.*, | ) | |
|     *Plaintiffs*, | ) | |
| | ) | |
|     *vs.* | ) | 1:10-cv-0358-JMS-TAB |
| | ) | |
| MICHAEL A. GARGANO, in his official capacity as Secretary of the Indiana Family and Social Services Administration, *et al.*, | ) ) ) ) | |
|     *Defendants.* | ) | |

## **DECISION ON PENDING MOTIONS**

Presently before the Court are Plaintiffs' Motion for Summary Judgment, [dkt. 64], Defendants' Motion for Partial Judgment on the Pleadings, [dkt. 78], and Defendants' Alternative Motion Pursuant to Federal Rule of Civil Procedure 56(d),[1] [dkt. 91].

Plaintiffs sued Defendants Michael A. Gargano and Patricia Casanova (collectively, "Defendants") in their official capacities with the Indiana Family and Social Services Administration ("FSSA"). In their Amended Complaint, Plaintiffs allege that Defendants' enforcement of 405 I.A.C. 5-22-6(b)(6) and (b)(7) (respectively, "§ (b)(6)" and "§ (b)(7)") violates federal Medicaid law. [Dkt. 60 at 18.] The Court previously certified Plaintiffs' claims as a class action, and Plaintiffs now ask that summary judgment and a permanent injunction be entered in favor of the class.

**I.**

**THE CLASS**

The class representatives—A.M.T., J.J.M., and J.M.G.—are disabled minors ages seven, nine, and twelve who are enrolled in the Medicaid program. Two of them have been diagnosed

---

[1] Defendants cite Federal Rule of Civil Procedure 56(f) to support their request; however, Rule 56 was amended effective December 1, 2010, and Defendants now seek relief under Rule 56(d).

with cerebral palsy and one has been diagnosed with a type of mitochondrial metabolic myopathy. All three suffer from functional limitations and have received physical and occupational therapies pursuant to the recommendations of their treating physicians for most of their lives.[2]

In late 2009 or early 2010, each of the Plaintiffs, through their respective medical providers, sought authorization for their therapies to continue at the previous rates prescribed by their treating physicians for an additional six months. It is undisputed that Defendants invoked § (b)(6) and/or § (b)(7) to deny Plaintiffs' requests in substantial part by limiting the prescribed treatment. [*See* dkts. 60-2 to 60-4 (denial notices).] At least two of the named Plaintiffs had their requested treatments denied or modified pursuant to both § (b)(6) and § (b)(7). [Dkts. 60-2 at 3 (referencing treatment for more than two years and that maintenance therapy is "uncoverable per IAC gu[i]delines"); 60-3 at 3 (citing § (b)(6) and § (b)(7) and noting "member has been receiving physical therapy for more than two (2) years" and "little or no change in the therapy goals . . . , which is maintenance therapy").]

In November 2010, this Court designated A.M.T., J.J.M., and J.M.G as representative plaintiffs for the following certified class:

> Any and all persons in Indiana who are or will be enrolled in the Medicaid program and who are or will be under the age of twenty-one (21) who have been or will be denied coverage for physical therapy, occupational therapy, respiratory therapy, and/or speech pathology ("therapies"), or who have had or will have coverage for these therapies otherwise limited, <u>which denial or limitation is based upon 405 IAC 5-22-6(b)(6) and/or 405 IAC 5-22-6(b)(7)</u>, notwithstanding the fact that a physician acting within the scope of his or her practice under Indiana law has or will recommend and/or prescribe these therapies for the Medicaid recipient.

[Dkt. 87 at 12 (emphasis added).][3]

---

[2] For a detailed account of the Plaintiffs' medical conditions and treatment history, see dkt. 65 at 10-16.

The parties make no distinction between § (b)(6) and § (b)(7), treating these "co-extensive" rules together under the term "maintenance therapy." [Dkts. 65 at 2 n.2; 93 at 2 n.1.] Although only certain types of services are at issue—physical therapy, occupational therapy, respiratory therapy, and/or speech pathology—the parties do not distinguish between the types of treatment in their arguments. The Court will refer to the services at issue collectively as "therapies."

## II.

### DEFENDANTS' MOTIONS

#### A. Defendants' Rule 56(d) Motion

In addition to their response to Plaintiffs' summary judgment motion, Defendants filed an "Alternative Motion" pursuant to Rule 56(d) motion, requesting that the Court not rule on Plaintiffs' motion for summary judgment until the completion of discovery. [Dkt. 91.] Contemporaneously with that request, and as required by Rule 56(d), counsel for Defendants submitted an affidavit detailing six categories of discovery counsel plans to conduct to dispute Plaintiffs' claims. [Dkt. 91-1 at 1.] These categories include obtaining expert testimony regarding the

---

[3] Defendants make a passing reference to their view that if the Court determines that their actions violate federal Medicaid law relating to mandatory services under the EPSDT program, the class definition will be overly inclusive because it does not require class members to have been through an EPSDT screening. [Dkt. 93 at 12-13.] The reference is so slim it cannot even be deemed argument, as it is wholly undeveloped. The record evidence and existing law don't seem to support it either. First, it is undisputed that the named Plaintiffs participated in an EPSDT screening and that services were at least initially provided as treatment arising from that screening. Second, Defendants are required to provide EPSDT screenings to children under 21 under federal Medicaid law. 42 U.S.C. § 1396a(a)(10); 42 U.S.C. § 1396d(a)(4)(B); 42 U.S.C. § 1396d(r). Thus, the Court is left to speculate as to what children under 21 might be "over-included." Moreover, although Medicaid coverage for the service categories at issue is discretionary in non-EPSDT cases under federal law, Indiana has elected to provide these services to all Medicaid-eligible individuals. I.C. § 12-15-5-1. Defendants fail to cogently develop their passing reference or address these issues; therefore, their contention is waived. *Wolotka v. Sch. Town of Munster*, 399 F. Supp. 2d 885, 901 (N.D. Ind. 2005) ("Failure to develop an argument constitutes waiver.").

medical necessity of therapy services for children with chronic illnesses; obtaining testimony and documentation from the agencies contracting with FSSA regarding the criteria used to determine medical necessity of therapy services for children with chronic illnesses; determining the veracity of the allegations of the named Plaintiffs' medical providers; determining the veracity of the allegations of the named Plaintiffs' guardians; obtaining expert testimony regarding the ability of unskilled individuals to provider therapy services for children with chronic illnesses; and obtaining expert testimony regarding medical therapies, including alternatives, that can be used for children with chronic conditions. [Dkt. 91-1 at 1-2.]

The discovery that Defendants identify is irrelevant to the Court's determination of the Plaintiffs' narrow legal challenge. Specifically, the veracity of the allegations of the medical providers and the named Plaintiffs' guardians is irrelevant because Defendants did not deny the prescribed services because of guardian or provider fraud, overbilling, or because an unskilled individual could provide the service.[4] Testimony and documentation from the agencies contracting with the FSSA regarding the criteria used to determine medical necessity of therapies for children with chronic illnesses are irrelevant because Defendants already admit that they do not consider potential regression when making the determination. [Dkt. 37-1 at 9, 12-13.] Finally, expert testimony regarding medical necessity, alternative therapies, and the ability of unskilled individuals to provide therapies for children with chronic illnesses is inappropriate because Plaintiffs' narrow legal challenge is a question of law for the Court, not for a testimonial expert. *See United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008) (affirming a district court judge's decision to exclude expert testimony regarding the meaning of statutes and regulations because

---

[4] The Court did not rely on the designated provider or guardian affidavits to decide the motions at issue in this order. It was not necessary because Defendants do not dispute that they do not consider regression.

- 4 -

"[t]hat's a subject for the court, not for testimonial experts[, and t]he only legal expert in a federal courtroom is the judge").

The only question at issue is whether Defendants' ban on maintenance therapy, without considering potential regression, violates federal Medicaid law. This is a legal question for the Court that is appropriate to decide on the current record. For these reasons, the Court denies Defendants' alternative Rule 56(d) motion.

### B. Defendants' Motion for Partial Judgment on the Pleadings

Defendants also filed a Motion for Partial Judgment on the Pleadings, arguing that no private right of action exists for Plaintiffs to bring their claim under 42 U.S.C. § 1983 for alleged violations of 42 U.S.C. §§ 1396a(a)(8), (a)(17), and 42 CFR 440.230. [Dkt. 78.] Defendants do not challenge Plaintiffs' right to bring a private cause of action under 42 U.S.C. § 1396a(a)(10). [Dkt. 79 at 2 ("Defendants are not seeking judgment at this time on the Plaintiffs' claim under 42 U.S.C. § 1396a(a)(10).").] Because the Court ultimately finds that Defendants' policy violates 42 U.S.C. § 1396a(a)(10) and Defendants do not challenge Plaintiffs' right to bring a private cause of action under that provision, Defendants' Motion for Partial Judgment on the Pleadings is denied as moot.[5]

---

[5] Because there is no dispute that a private cause of action exists under 42 U.S.C. § 1396a(a)(10), relief is awarded to Plaintiffs under this section, not under 42 U.S.C. § 1983. *See generally Ind. Protection & Advocacy Servs. v. Ind. Family & Soc. Servs. Admin.*, 603 F.3d 365, 380 (7th Cir. 2010 (en banc) (holding that plaintiff had right to sue under federal act and declining to address "alternative basis" for pursuing relief under 42 U.S.C. § 1983). Therefore, Plaintiffs' request in their Amended Complaint for attorney fees under 42 U.S.C. § 1988 is denied.

# III.

## PLAINTIFFS' SUMMARY JUDGMENT MOTION

### A. Summary Judgment Standard

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence would, as a matter of law, conclude in the moving party's favor and is thus unnecessary. *See* Fed. R. Civ. Pro. 56(c). When evaluating a motion for summary judgment, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). Nevertheless, "the Court's favor toward the non-moving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). The non-moving party must set forth specific facts showing that there is a material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex*, 477 U.S. at 323. The key inquiry is the existence of evidence to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).

### B. Relevant Portions of Medicaid Law

The Medicaid Act allows states to provide federally-subsidized medical assistance to eligible individuals and families with insufficient income or resources to pay for necessary medical services. *Collins v. Hamilton*, 349 F.3d 371, 374 (7th Cir. 2003); 42 U.S.C. § 1396. A state's participation in the Medicaid program is voluntary; however, if a state elects to participate, "it must abide by all federal requirements and standards" set forth in the Medicaid Act. *Collins*, 349 F.3d at 374.

Indiana participates in the Medicaid program and, therefore, is bound by its requirements. [Dkt. 93 at 5.] One of the mandatory service categories requires an early and periodic screening, diagnostic, and treatment service ("EPSDT") for "categorically needy individuals under the age of twenty-one." *Collins*, 349 F.3d at 374; 42 U.S.C. § 1396d(a)(4)(B). EPSDT services are mandated by § 1396a(a)(10), which requires states to provide the services listed in § 1396d(a)(1)-(5), (17), and (21). Within the scope of EPSDT services, states are also required to furnish "[s]uch other necessary health care, diagnostic services, treatment, and other measures described in [§ 1396d(a)] to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan." 42 U.S.C. § 1396d(r)(5).

Plaintiffs allege that § (b)(6) and § (b)(7) violate federal Medicaid law. First, Plaintiffs take issue with § (b)(7), which provides that "[m]aintenance therapy is not a covered service." "Maintenance therapy" is defined as "therapy addressing chronic medical conditions where further progress can no longer be expected or where progress is minimal in relation to the time needed in therapy to achieve that progress." 405 I.A.C. 5-22-1(5). Defendants admit that maintenance therapy does not consider a disabled child's potential to regress without therapy. [Dkt. 37-1 at 9.] If a child regresses after a request for therapies is denied, the child can obtain additional therapies "as long as they can show that they've regressed and need additional therapy due to the ability to progress." [Dkt. 37-1 at 10.]

Second, Plaintiffs challenge § (b)(6), which provides that "[t]herapy for rehabilitative services will be covered for a recipient no longer than two (2) years from the initiation of the therapy unless there is a significant change in medical condition requiring longer therapy. . . ." Under § (b)(6), children are precluded from receiving therapies for more than two years without

a significant change in their condition. [Dkt. 37-1 at 12-13.] While a child can receive therapies for a longer period of time on a case-by-case basis, this exception is unavailable if Defendants determine that continued therapies would constitute maintenance therapy under § (b)(7). [Dkt. 37-1 at 13.]

Plaintiffs allege that Defendants' practice or policy of denying or limiting coverage for therapies prescribed by a Medicaid recipient's physician, refusing to cover maintenance therapy, and/or refusing to cover therapies for more than two years without a significant change in medical condition violates various provisions of federal Medicaid law. [Dkt. 60 at 18 ¶¶82-84 (citing 42 U.S.C. § 1396a(a)(8); 42 U.S.C. § 1396a(a)(10); 42 U.S.C. § 1396a(a)(17); and 42 C.F.R. § 440.230).] Plaintiffs request a permanent injunction to enjoin Defendants from enforcing § (b)(6) and § (b)(7). [Dkt. 60 at 19.]

### C. Discretion to Deny Prescribed Therapies

The parties disagree whether Defendants have discretion to deny therapies that have been prescribed by a child's medical provider as medically necessary. Plaintiffs argue that Defendants do not have discretion to deny or limit services prescribed as medically necessary by a child's medical provider because "the responsibility for determining the propriety of services for EPSDT-eligible children rests with their actual providers." [Dkt. 65 at 20.] Defendants, however, argue that they must have discretion to deny services prescribed by medical providers because "Congress could not have intended a system that would allow one physician to determine an individual's plan of care without any oversight—such a system would be rampant with fraud or overbilling." [Dkt. 93 at 10.]

But fraud and overbilling are not at issue here. It is undisputed that Defendants denied or limited the class members' prescribed therapies "based upon 405 IAC 5-22-6(b)(6) and/or 405

IAC 5-22-6(b)(7)." [Dkt. 87 at 12 (class definition).] It is also undisputed that Defendants do not take a child's potential to regress without the prescribed therapies into account when denying or limiting services as maintenance therapy. [Dkt. 37-1 at 9, 12-13.] As Plaintiffs emphasize, Defendants' failure to consider their potential to regress when applying the state regulations is the only legal issue presented in this case. [*See, e.g.*, dkt. 65 at 2 n.2 ("the legal question presented by this case is whether the State is required to provide Medicaid coverage for therapies that are necessary to prevent regression") (original emphasis).]

As it turns out then, the parties' arguments regarding the extent of Defendants' discretion to deny or limit therapies prescribed as medically necessary are irrelevant to the legal dispute at issue. Whether or not Defendants have discretion to deny therapies on the bases of fraud, overbilling, or because unskilled individuals could perform the prescribed therapies is irrelevant because Defendants did not deny the class members' prescribed therapies on any of those bases. Plaintiffs here raise a legal challenge to the enforceability of two of Defendants' rules, and limit their challenge to where these rules alone form the basis for the denial. Discretion, or lack thereof, is not at issue because Defendants admit that they do not take potential regression into account. For these reasons, the Court will not address the merits of the parties' discretion-based arguments. [*See* dkts. 65 at 19-22; 93 at 7-12; 97 at 8-11.]

### D. Interpreting the Phrase "To Correct or Ameliorate"

EPSDT services are mandated by 42 U.S.C. § 1396a(a)(10). *Collins*, 349 F.3d at 374; [*see also* dkt. 93 at 6 (acknowledging that EPSDT services are "mandatory")]. That section requires coverage of EPSDT services described in 42 U.S.C. § 1396d(a)(4)(B), which references the scope of required EPSDT services defined at 42 U.S.C. § 1396d(r)(5). According to 42 U.S.C. § 1396d(r)(5), EPSDT services are mandated if those services are a type of medical assis-

tance that is "necessary . . . <u>to correct or ameliorate</u> defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan." 42 U.S.C. § 1396d(r)(5) (emphasis added.) Thus, because Indiana chooses to participate in Medicaid, it must provide eligible children with Medicaid coverage for treatment that is found to be medically necessary in an EPSDT screening. And Indiana must cover any treatment that will correct or ameliorate defects and physical and mental illnesses and conditions.[6] *See Collins*, 349 F.3d at 376 (holding that Indiana is required to fund the cost of placement in a long-term mental illness facility if it is deemed medically necessary by an EPSDT screening).

The Medicaid statutes do not specifically define the phrase "to correct or ameliorate." The parties disagree about what that phrase means and whether maintenance therapy that prevents a child's regression is included. Plaintiffs argue that therapies necessary to prevent regression are included in the phrase because without those therapies, members of the class will lose significant functionality, the ability to assist in their activities of daily living, and may require surgeries to regain previous functionality. [Dkt. 65 at 26.] Defendants argue that their rules denying coverage for maintenance therapy encompass a reasonable interpretation of the terms "correct" and "ameliorate." [Dkt. 93 at 13.]

Although few courts have defined and applied the phrase "to correct or ameliorate," two district courts have done so in analogous situations. The Court will provide a brief overview of each of these cases.

---

[6] Likewise, Indiana's EPSDT program provides that services not covered by the State Medicaid plan are still available to eligible recipients, subject to prior authorization, if the service "is necessary to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services." 405 I.A.C. 5-15-4.

### 1. *Collins v. Hamilton* - Indiana Required to Fund Medically Necessary Long-Term Care for Mentally Ill Children To Ameliorate Condition

This District is one of the few courts nationwide to define and apply the phrase "correct or ameliorate." In *Collins v. Hamilton*, now Chief Judge Young held that defendants' standing policy of refusing to provide necessary long-term residential treatment to mentally ill children violated federal Medicaid law. 231 F. Supp. 2d 840 (S.D. Ind. 2002), *aff'd* 349 F.3d 371 (7th Cir. 2003). Like the case before this Court, *Collins* involved a class action challenge to a policy enforced by the former heads of the FSSA. *Id.* at 841-42. The *Collins* defendants argued that "the psychiatric services to which an EPSDT child is entitled involve only 'active' treatment" and that the phrase "to correct or ameliorate" did not anticipate long-term residential care. *Id.* at 848.

The *Collins* district court referenced a well-known dictionary that defined the term "ameliorate" as "to make better or more tolerable." *Id.* at 849. Noting that "[t]here is no time limitation evident in this definition," the district court held that "[r]equired treatment includes anything which is to make a condition, even a long-term condition like mental illness, more tolerable." *Id.* at 849. For that reason, the district court found that the defendants' standing policy of refusing to provide long-term residential treatment for patients for whom such treatment had been found necessary by an EPSDT screening violated the federal Medicaid Act, entitling the class members to summary judgment and a permanent injunction. *Id.*

The Seventh Circuit Court of Appeals affirmed Judge Young's decision, specifically noting that "[w]e see no reason why residential treatment, even if long-term, cannot consist of 'active treatment' that 'improves or ameliorates' a patient's condition." 349 F.3d at 375-76. Because Indiana was required to fund the cost of placement in the long-term treatment facility at

issue, the Seventh Circuit affirmed the district court's decision to grant summary judgment and issue a permanent injunction. *Id.* at 376.

### 2. *Ekloff v. Rodgers* - Incontinence Briefs for Disabled Children Deemed Medically Necessary to Prevent Skin Breakdown

In *Ekloff v. Rodgers*, the United States District Court for the District of Arizona had to determine whether incontinence briefs prescribed as medically necessary to prevent skin breakdown for disabled children were covered by Arizona's Medicaid program. 443 F. Supp. 2d 1173 (D. Ariz. 2006). At issue in that class action was whether preventative treatment is required under the phrase "to correct or ameliorate." *Id.* at 1180. Recognizing that *Collins* is "the only case nationwide that even makes an attempt to define 'correct or ameliorate' for purposes of Medicaid," *Ekloff* applied the *Collins* definition and held that

> [c]learly, the incontinence briefs are meant to make the children's condition better or more tolerable by preventing skin breakdown. The briefs are used to not only prevent future pain from open skin sores but to facilitate and maximize their daily opportunities as well as to make their condition as tolerable as possible by not forcing them to suffer the needless pain of skin sores. This seems to be the very essence of what Congress had intended in their Medicaid statute.

*Id.*

*Ekloff* reviewed the legislative history of EPSDT and concluded that it there "is a very strong inference to be inclusive rather than exclusive." *Id.* (citing H.R. 3299, 101st Cong. § 4213 (1989) (EPSDT was crafted to "be the nation's largest preventative health program from children.")).

Ultimately, *Ekloff* rejected the defendants' argument that the phrase "to correct or ameliorate" means that the state only needs to cover services that correct or improve conditions that actually exist. Under that logic, *Ekloff* noted that the state would "exclude such remedies as antipsychotic drugs until someone has already had a bout of insanity rather than prevent it in the first place." *Id.* at 1181. *Ekloff* rejected the state's narrow interpretation and concluded that it was

- 12 -

"impossible to integrate within the wider framework of Medicaid law." *Id.* For these reasons, *Ekloff* held that the prescribed incontinence briefs were encompassed by the phrase "to correct or ameliorate" and that the state was obligated to provide them under federal Medicaid law. *Id.*

### E. Whether Maintenance Therapy to Prevent Regression is a Covered Service

At issue here is whether prescribed therapies that would prevent regression are covered under the Medicaid program. Defendants argue that therapies to maintain a level of functionality where further progress can no longer be expected or progress is minimal in relation to the time needed to achieve that minimal progress is not covered because it is "solely for the purposes of sustaining an individual at a particular level, rather than increasing or improving their abilities." [Dkt. 93 at 15.] Defendants contend that they should be allowed to deny the prescribed therapies and wait for the children to be able to "show that they've regressed and need additional therapy due to the ability to progress" before covering the treatment. [Dkt. 37-1 at 10.] Defendants proffer additional definitions of "ameliorate" and argue that those definitions focus on "mak[ing] things better, rather than 'more tolerable.'" [Dkt. 93 at 14-15.]

This Court will follow the definition of "ameliorate" used by the district courts in *Collins* and *Ekloff*—"to make better or more tolerable." In affirming the *Collins* district court, the Seventh Circuit did not take issue with the district court's definition or application of the term, even commenting that "[w]e see no reason why residential treatment, even if long-term, cannot consist of 'active treatment' that 'improves or ameliorates' a patient's condition."[7] 349 F.3d at 375-76. Moreover, a comprehensive definition of the term complies with Congress' intent to be inclusive

---

[7] The former heads of the FSSA who were defendants in *Collins* could have raised any issues they had with the district court's definition on appeal. There is no evidence, however, that they challenged the district court's definition.

rather than exclusive with EPSDT. 443 F. Supp. 2d at 1180; H.R. 3299, 101st Cong. § 4213 (1989).

The Court finds that Defendants' practice and policy of denying or limiting prescribed therapies as maintenance therapy without considering a disabled child's potential for regression violates federal Medicaid law. As Defendants admit, the plain meaning of a federal statute controls if it is clear. [Dkt. 93 at 13 (citing *MBH Commodity Advisors, Inc. v. Commodity Futures Trading Comm'n*, 250 F.3d 1052, 1060 (7th Cir. 2001).] The Court finds that the plain meaning of the term "ameliorate" encompasses therapies that prevent regression. Although a child with a chronic condition may reach a level where further progress can no longer be expected or where progress is minimal in relation to the time needed to achieve that minimal progress, therapies that prevent regression still ameliorate the condition by making it more tolerable. Specifically, therapies that prevent regression facilitate and maximize daily opportunities and prevent a child from suffering the needless degeneration of functionality. This was Congress' intent with EPSDT. *See Ekloff*, 443 F. Supp. 2d at 1180; *Collins*, 349 F.3d at 375-76. Additionally, there is no time limitation on the requirement that services be provided to ameliorate a defect or condition. 42 U.S.C. § 1396d(r)(5). Because therapies that prevent regression ameliorate a disabled child's condition, they are covered under federal Medicaid law. 42 U.S.C. § 1396a(a)(10); 42 U.S.C. § 1396d(a)(4)(B); 42 U.S.C. § 1396d(r)(5).

Defendants argue that the Court should defer to their interpretation of the term "ameliorate" and their limitations on maintenance therapy in the rules because they are reasonable. [Dkt. 93 at 13.] The Court disagrees. It is not reasonable to interpret the term to deny a disabled child prescribed therapies because he has reached a functional plateau, without evaluating

whether he will regress without the prescribed therapies. It is even more unreasonable—to the point of absurdity—to contemplate a required regression before therapies can resume.

The Court will interpret statutes to avoid absurd results. *Treadway v. Gateway Chevrolet Oldsmobile, Inc.*, 362 F.3d 971, 976 (7th Cir. 2004). The practical effects of Defendants' policy are impermissible—once a disabled child reaches a functional plateau, he can only obtain additional therapies if he regresses and can show that he needs additional therapies due to his ability to again progress. [*See* dkt. 37-1 at 10 (admission that child can reapply and obtain additional therapies "<u>as long as they can show that they've regressed</u> and need additional therapy due to the ability to progress") (emphasis added).] Defendants' policy puts a disabled child and his guardians on a figurative rollercoaster to try to maintain the child's highest level of functionality. If the child reaches a plateau, he will be denied therapies until he regresses to the point where he can progress. After reapplying, the child will be authorized for therapies until he reaches another plateau. Once he reaches that plateau, he will again be denied therapies until he regresses to a point where he can again progress.

Defendants' policy also ignores the possibility that some children denied therapies may regress and, due to the lack of therapies, completely lose the ability to progress. Defendants' policy would not allow these children to obtain additional therapies because they can no longer progress. *Id.* Under those circumstances, a disabled child would be perpetually denied additional therapies because of the adverse effect of Defendants' initial denial. The practical effects of Defendants' policy, which they ignore, lead to an absurd result.

Finally, Defendants' policy contradicts the purposes of EPSDT. EPSDT was crafted to be the nation's largest preventative health program for children. *See Ekloff*, 443 F. Supp. 2d at 1180 (quoting H.R. 3299, 101st Cong. § 4213 (1989)). As Defendants admit, "'The purpose of

- 15 -

the EPSDT program is to ensure that poor children receive comprehensive health care at an early age, so that they will develop fewer health problems as they get older.'" [Dkt. 93 at 6 (quoting *Salazar v. Dist. of Columbia*, 954 F. Supp. 278, 303 (D.D.C. 1996).] Nevertheless, Defendants' policy excludes disabled children who have reached a functional plateau. Defendants' policy also ignores the comprehensive preventative goals of EPSDT by denying treatment to disabled children who have reached a functional plateau but who, by Defendants' own admission, can seek additional treatment later after regression. Allowing a disabled child seeking prescribed therapies to regress because he has reached a functional plateau is the opposite of preventative treatment and contradicts the purpose of EPSDT.

For these reasons, the Court concludes that maintenance therapy to prevent regression is encompassed by the term "ameliorate" and is covered under federal Medicaid law.

### F. Permanent Injunction

For the reasons described above, the Court concludes that Defendants' enforcement of § (b)(6) and § (b)(7) to deny or limit the class members' prescribed therapies violates 42 U.S.C. § 1396a(a)(10). That section of the federal Medicaid Act requires coverage of EPSDT services described in 42 U.S.C. § 1396d(a)(4)(B), which includes services defined in 42 U.S.C. § 1396d(r)(5), such as services that ameliorate defects and physical conditions.

Plaintiffs request a permanent injunction enjoining Defendants from enforcing § (b)(6) and § (b)(7). [Dkts. 60 at 19; 65 at 34.] Because Defendants' enforcement of these rules violates federal Medicaid law, the Court enters a permanent injunction enjoining Defendants, their agents, and their successors from denying or limiting coverage for prescribed physical therapy, occupational therapy, respiratory therapy, and/or speech pathology, for any person enrolled in

the Medicaid program under the age of twenty-one where such denial or limitation is based upon 405 I.A.C. 5-22-6(b)(6) and/or (b)(7).

## CONCLUSION

For the reasons detailed herein, the Court **GRANTS** Plaintiffs' Motion for Summary Judgment to the extent they sought summary judgment under 42 U.S.C. § 1396a(a)(10) and **DENIES** their request as moot to the extent they sought summary judgment under 42 U.S.C. § 1396a(a)(8), 42 U.S.C. § 1396a(a)(17), and 42 C.F.R. § 440.230. [Dkt. 64.] The Court **DENIES** Defendants' Alternative Motion Pursuant to Federal Rule of Civil Procedure 56(d), [dkt. 91], and **DENIES** as moot Defendants' Motion for Partial Judgment on the Pleadings, [dkt. 78]. The Court **DENIES** Plaintiffs' request for attorney fees under 42 U.S.C. § 1988.

The Court **GRANTS** Plaintiffs' request for permanent injunctive relief. Defendants, their agents, and successors are hereby enjoined from denying or limiting coverage for prescribed physical therapy, occupational therapy, respiratory therapy, and/or speech pathology, for any person enrolled in the Medicaid program under the age of twenty-one where such denial or limitation is based upon 405 I.A.C. 5-22-6(b)(6) and/or (b)(7).

02/10/2011

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

Betsy M. Isenberg
INDIANA OFFICE OF THE ATTORNEY GENERAL

Betsy.Isenberg@atg.in.gov

Gavin Minor Rose
ACLU OF INDIANA
grose@aclu-in.org

Erica Sue Sullivan
INDIANA ATTORNEY GENERAL
erica.sullivan@atg.in.gov